THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **K.A.** o/b/o her minor child, J.A. | : | |
| | : | |
| **Plaintiff** | : | |
| v. | : | **3:12-CV-2486** |
| | : | **(JUDGE MARIANI)** |
| **ABINGTON HEIGHTS SCHOOL** | : | |
| **DISTRICT,** et al. | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

### I.  INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 50).  This motion is the most recent step in protracted litigation stemming from the expulsion of a minor from Abington Heights Middle School after he admitted to distributing contraband at school and threatened to severely hurt another student for "squealing" on him.  The student, J.A., and his mother, K.A., previously settled another action brought in the Middle District of Pennsylvania based on the same incident, and have now filed the present lawsuit again as the result of actions or inactions on the part of the school district and its' staff that resulted from J.A.'s misconduct.[1]

On December 13, 2012, the plaintiff, K.A., filed a Complaint on behalf of her son, J.A.  Prior to the filing of this claim, she had filed a special education due process action

---

[1] The prior action re-instated J.A. at Abington Heights and provided an array of support systems, including a compensatory education fund, to help him progress in his education.  Plaintiff now only requests financial compensation.

against Abington Heights School District which resulted in an appeal of the Hearing Officer's decision to this Court by the School District, and ultimately a settlement agreement between the parties. (*See generally*, 3:12-cv-804-RDM (M.D. Pa. 2012); Release and Settlement Agreement, Doc. 51, Ex. A).

Following unsuccessful mediation proceedings in the present case, Plaintiff filed a First Amended Complaint on June 21, 2013 (Doc. 21) which Defendants moved to dismiss on July 9, 2013 (Doc. 23). The Court granted in part and denied in part Defendants' motion. The Court dismissed with prejudice Plaintiff's Fifth Amendment claim, Fourteenth Amendment substantive due process claim, intentional infliction of emotional distress claim, negligence claim, and civil rights claim, and dismissed Plaintiff's Fourteenth Amendment procedural due process claim without prejudice. The Court also dismissed with prejudice Plaintiff's breach of fiduciary duty and punitive damages claims as to Abington Heights School District, dismissed these claims without prejudice as to Defendants Mahon and Quinn, and allowed these two claims to proceed against Defendants Antonetti, Elia, and Kelly. Finally, the Court dismissed with prejudice Plaintiff's Section 504 of the Federal Rehabilitation Act claim as to Defendants Mahon, Quinn, Elia, Antonetti, and Kelly, but dismissed this claim without prejudice as to Abington Heights School District. (*See* Docs. 43, 44).

Plaintiff timely filed a Second Amended Complaint (Doc. 47) and, on August 19, 2014, Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint (Doc.

50). The parties have fully briefed the motion, and it is ripe for decision. For the reasons

set forth below, Defendants' motion to dismiss will be granted in part and denied in part.

## II. FACTUAL ALLEGATIONS

Plaintiff, K.A., brings this action on behalf of her son, J.A., a student enrolled in the

Abington Heights School District (Second Amended Complaint, Doc. 47, ¶¶ 4, 16) against

Defendants Abington Heights School District ("Abington Heights"); Michael Mahon,

superintendent of Abington Heights; Michael Elia, principal of Abington Heights Middle

School ("AHMS"); Eduardo Antonetti, vice-principal of AHMS; and Brian Kelly, school

counselor at Abington Heights[2] (id. at ¶¶ 5-10).

Plaintiff's Second Amended Complaint makes the following allegations:

J.A. was born in 1997, and later diagnosed with two neurological disorders: Attention

Deficit Disorder ("ADD") and Dysthymic Disorder. (Doc. 47, ¶¶ 12-15). Beginning in 2008,

J.A. was enrolled in the Abington Heights School District, where he was provided with an

instructional support plan pursuant to Section 504 of the Rehabilitation Act of 1973 due to

these neurological disorders. (Id. at ¶ 16).

On the morning of February 24, 2011, J.A. brought "a small quantity" of "spice"[3] to

school and later gave this product to his friend, A.W., in exchange for a debt he owed to

A.W. (Doc. 47, ¶ 41). J.A. had previously purchased this synthetic marijuana over the

---

[2] In Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss, she withdraws all claims against Assistant Superintendent, Thomas Quinn, Ph.D. (Doc. 55, at 3 n.1).

[3] While "spice", a type of synthetic marijuana, is legal, it was considered contraband pursuant to Abington Heights' School District policy. (Doc. 47, ¶ 41 n.1).

internet. (*Id.*). Later that same day, J.A. and A.W. reported to detention. (*Id.* at ¶¶ 40, 42). During detention, A.W. was removed by vice-principal Antonetti. (*Id.* at ¶ 42). J.A. remained in detention until approximately 4:00 p.m., after which A.W. told him that another student, W.F., had "squealed" that A.W. possessed, and had given him, "spice", causing A.W. to be searched and administrators to find a small quantity of the product on him. (*Id.* at ¶¶ 44, 48). In turn, A.W. told the administrators that he had obtained the "spice" from J.A. (*Id.* at ¶ 40). Once J.A. left detention, he contacted A.W. who told him what had happened and that A.W.'s father had come to the school to meet with administrators. (Doc. 47, ¶ 46). W.F.'s parents were also contacted on, or around, this time. (*Id.* at ¶ 47). Despite Abington Heights' Policy that "'the parent will be contacted, the situation described and an immediate conference arranged' when a student is suspected of possessing, using, or distributing drugs, alcohol, or contraband", J.A.'s mother was not contacted on this day. (*Id.* at ¶¶ 48, 110). Instead, J.A. was allowed to go home and had no contact that evening with the administration, his teachers, or counselors. (*Id.* at ¶ 48). However, on this same day[4], Defendants contacted detectives from the Lackawanna County District Attorney's Office to ask for assistance "in a drug investigation." (*Id.* at ¶ 49).

On February 25, 2011, immediately upon arriving at school, J.A. was approached by counselor Kelly, who asked J.A. to accompany him. (Doc. 47, ¶ 54). When J.A. arrived in

---

[4] Several times throughout the complaint, including in connection with the timing of Defendants' contact with the District Attorney's office, Plaintiff states that the event occurred on February 24, 2012. In reviewing the remainder of the complaint and supporting documentation, it is clear that Plaintiff intended to use the year 2011.

vice-principal Antonetti's office, Kelly told J.A. that A.W. had identified J.A. as the supplier of

the "spice" found on him the prior day. (*Id*. at ¶ 56). For approximately two to three hours,

Antonetti and Kelly spoke with J.A., who ultimately admitted to bringing the "spice" to

school. (*Id*. at ¶¶ 59-60). During this time, Principal Elia also joined the "interrogation." (*Id*.

at ¶ 61). Additionally, the defendants questioned Plaintiff as to the source of the "spice", the

cost of this product, and whether J.A. had distributed the "spice" to any other students. (*Id*.

at ¶ 62). Defendants also searched J.A.'s cell phone and backpack. (*Id*. at ¶ 66).

At the end of this questioning, Kelly escorted J.A. to the school suspension room

next to the vice-principal's office and told him to remain there while Kelly and Antonetti had

a "private discussion." (Doc. 47, ¶ 68). J.A. subsequently returned to Antonetti's office

where the vice-principal and Kelly asked him questions about his home life, including

whether marijuana was used in the home. (*Id*. at ¶¶ 70-71). J.A. admitted that he had seen

marijuana in his mother's home twice,[5] but that he did not believe she and her fiancé, J.R.,

used other drugs. (*Id*. at ¶¶ 72, 77). At this time, J.A. was again placed in the school

suspension room and remained there throughout the rest of the day, except for periodic

times when he was brought into Antonetti's office. (*Id*. at ¶¶ 78, 80). Throughout the day,

Defendants were in contact with members of local law enforcement. (*Id*. at ¶ 79). At no

time was J.A. told that he could, or should, contact his parents or an attorney. (*Id*. at ¶ 98).

---

[5] In fact, according to the Affidavit of Probable Cause which Plaintiff attached to her complaint and incorporated by reference, J.A. stated that he "and his parents have grown marijuana at home in the past", and that "his parents have marijuana in the home, and that his father regularly smokes marijuana. [J.A.] reports that his father has a very large bag of marijuana in his bedroom closet." (Affidavit of Probable Cause, Doc. 47, Ex. 2, at 4).

When J.A. failed to arrive home on the school bus at 2:15 p.m., his mother contacted the school district. (Doc. 47, ¶ 84). She was told that J.A. was at school, that there was a problem, and that she needed to come to campus. (*Id*. at ¶ 85). Immediately after arriving at the school, police officers and law enforcement officials arrived on campus with a search warrant for K.A.'s residence. (*Id*. at ¶¶ 86, 87). She was also informed that her son was accused of selling drugs in school. (*Id*. at ¶ 86). After speaking with school officials, K.A. and J.R. were allowed to take J.A. home, under police escort. (*Id*. at ¶¶ 89, 90). Upon arriving home, the police officers executed the search warrant and recovered what Plaintiff characterizes as a "small" amount of marijuana.[6] (*Id*. at ¶ 90).

J.A. was later adjudicated by the Office of Juvenile Probation in Lackawanna County for his threats to commit physical harm against W.F.[7] (*Id*. at ¶ 108).

On March 14, 2011, J.A., K.A., and J.R. attended an expulsion hearing before the Abington Heights Board of Directors, wherein the Board found J.A. guilty of possession of contraband on school property, "upon consideration of the facts presented, and largely on the admissions of J.A.". (Doc. 47, ¶¶ 114-116). As a result, J.A. was expelled for the remainder of the 2010/2011 school year and the entire 2011/2012 school year. (*Id*. at ¶

---

[6] Among other things, the police recovered a container with approximately 10 grams of suspected marijuana, four plastic baggies containing 12 grams, 6 grams, 4 grams, and 2 grams of suspected marijuana respectively, and a plastic bag containing approximately 52 grams of spice. (Affidavit of Probable Cause Continuation, Doc. 47, Ex. 2, at 12).

[7] On February 24, 2011, A.W. received a text message from J.A. stating "Holy shit, who is the WF, I am going to beat the shit out of him. Snitches die." (Affidavit of Probable Cause, Doc. 47, Ex. 2, at 4). J.A. went to the Office of Juvenile Probation in Lackawanna County, not for his possession or sale of spice, but for threatening to harm W.F., which he admitted to while speaking with school officials on February 25, 2011. (Doc. 47, ¶ 108).

117).  The Board also stated that "[d]uring the period of expulsion, the school district shall make available to the student the appropriate educational resources if necessary."  (Id.).

Plaintiff's Second Amended Complaint now brings claims against the defendants under the Fourteenth Amendment, alleging that they deprived J.A. of his liberty and property interests without due process of law and discriminated against him based on his disability (Count I), that the individual defendants breached their fiduciary duty owed to J.A. (Count II), that J.A. is entitled to punitive damages from the individual defendants as a result of the aforementioned conduct (Count III), and that Defendant Abington Heights violated Section 504 of the Federal Rehabilitation Act by discriminating against J.A. due to his disability and failed to provide him with the same or equal protection that other non-disabled students were provided (Count IV). (See generally, Doc. 47).

### III. STANDARD OF REVIEW

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Prop.

7

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted). A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements. *Ethypharm S.A. France v.*

*Abbott Labs.*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks

omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint: First, the court must take note of the
> elements a plaintiff must plead to state a claim. Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth. Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013)

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. ANALYSIS

### A. Factual Basis for Plaintiff's Fourteenth Amendment and
### Section 504 of the Rehabilitation Act Claims

As a threshold matter, the Court notes that the series of events that form the basis

for Counts I and IV in this action remain somewhat unclearly alleged. The actual events of

February 24 and 25, 2011, which are extensively detailed in the Second Amended

Complaint, are largely irrelevant with respect to Plaintiff's procedural due process and

Section 504 claims, as the allegations in both counts seemingly revolve around J.A.'s

purported right to, and denial of, an additional hearing prior to his expulsion.

At best, Plaintiff's complaint makes clear that J.A. received a hearing, at which his

parents were present, in front of the Abington Heights Board of Directors, "for the purpose of

defending himself" and that "upon consideration of the facts presented, and largely on the

admissions of J.A., [the Board] found him guilty of possession of contraband on school

property" and expelled him. (Doc. 47, ¶¶ 114-117). Plaintiff further avers that the hearing

was held "without J.A. having been afforded his statutory rights as a student with a disability

thus depriving him of both procedural and substantive rights" (*id.* at ¶ 118) because no other

hearing was held, or any additional procedures afforded to J.A. and his mother, prior to this

expulsion hearing. The complaint also vaguely alludes to the fact that a special education

hearing was later held on March 1, 2012, at which time Plaintiff was represented by

counsel, which led to an appeal of the hearing officer's decision by the school district and

9

was the subject of the prior federal lawsuit.[8]  A review of the due process hearing transcript,

attached to Plaintiff's complaint, indicates that, at least according to K.A., plaintiff's disability

was never raised at the expulsion hearing.  (Special Education Hearing Transcript, Doc. 47,

Ex. 1, at 92, 100).  Based almost entirely on these disjointed facts, Plaintiff asks the Court to

deny Defendants' motion to dismiss Counts I and IV.

## B. Count I – Violations of the Fourteenth Amendment

Count I of Plaintiff's Second Amended Complaint, brought against all Defendants,

alleges that Defendants violated J.A.'s rights under the Fourteenth Amendment "to

unabridged liberty" and property, specifically access to an education on equal terms and

conditions as his fellow students.  (Doc. 47, ¶ 132).  The Court previously dismissed

Plaintiff's substantive due process claim with prejudice (see Docs. 43, 44) and will therefore

only address Plaintiff's claim as it relates to J.A.'s procedural due process rights.

### 1. Procedural Due Process

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life,

liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  A

procedural due process claim is subject to a two-stage inquiry: (1) whether the plaintiff was

deprived of an individual interest that is encompassed within the Fourteenth Amendment's

protections, and (2) whether the procedures available to him provided "due process of law".

*Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006); *see also, Schmidt v.*

---

[8] While Plaintiff's Second Amended Complaint does not specifically discuss the due process hearing, Plaintiff attached the entire transcript of this hearing to the document. (*See* Doc. 47, Ex. 1).

*Creedon*, 639 F.3d 587, 595 (3d Cir. 2011). "It is axiomatic that a cognizable liberty or

property interest must exist in the first instance for a procedural due process claim to lie."

*Mudric v. Attorney Gen. of U.S.*, 469 F.3d 94, 98 (3d Cir. 2006).

Procedural due process guarantees that "'[p]arties whose rights are to be affected

are entitled to be heard; and in order that they may enjoy that right they must first be

notified", and this "right to notice and an opportunity to be heard must be granted at a

meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct.

1983, 32 L.Ed.2d 556 (1972). However,

> [t]he requirement of notice and an opportunity to be heard raises no
> impenetrable barrier to the taking of a person's possessions. But the fair
> process of decision making that it guarantees works, by itself, to protect
> against arbitrary deprivation of property. For when a person has an
> opportunity to speak up in his own defense, and when the State must listen to
> what he has to say, substantively unfair and simply mistaken deprivations of
> property interests can be prevented.

*Id*. at 81.

"Protected interests in property are normally 'not created by the Constitution.

Rather, they are created and their dimensions are defined' by an independent source such

as state statutes or rules entitling the citizen to certain benefits." *Goss v. Lopez*, 419 U.S.

565, 572-573, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (quoting *Bd. of Regents v. Roth*, 408

U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). "State law does not define the

parameters of due process for the purposes of the Fourteenth Amendment. Rather, federal

law defines those parameters." *Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 195 (3d Cir. 2009) (internal citations omitted).

### a. J.A.'s Liberty Interest

Plaintiff's allegation that J.A.'s procedural due process right to "unabridged liberty" was violated due to the defendants' actions in detaining him "in violation of the regulations, policies, practices and custom of the United States, Commonwealth of Pennsylvania and the Abington Heights School District of Lackawanna County, Pennsylvania" (Doc. 47, ¶ 132(a)) entirely fails to demonstrate a constitutional violation.  Plaintiff appears to recognize the deficiencies of this claim and does not address J.A.'s purported liberty interest in her brief in opposition to Defendants' motion to dismiss.[9]

While the Court recognizes that a liberty interest in reputation exists under the Fourteenth Amendment as the result of a suspension or expulsion, *see Goss*, 419 U.S. at 574-576, Plaintiff only appears to allege that the actual detention of J.A. on February 25, 2011, constituted a violation of J.A.'s constitutional liberty interest, not the subsequent expulsion.  It is unclear how this allegation constitutes a procedural due process claim. Plaintiff's contentions with respect to J.A.'s detention are better suited for a Fourth Amendment "seizure" claim, although they would also nonetheless likely fail under Third Circuit precedent.  In *Shuman ex rel. Shertzer v. Penn Manor School District*, the Court

---

[9] In fact, the word "liberty" does not appear once in Plaintiff's entire brief in opposition to Defendants' motion to dismiss. (*See generally,* Doc. 55). Defendants also fail to specifically address Plaintiff's procedural due process liberty claim in their brief in support of the motion to dismiss. (*See generally,* Doc. 51).

found that a student who was detained for four hours in a small conference room for the purpose of the school being able to investigate an alleged incident of sexual misconduct and determine the appropriate punishment, was reasonable in light of the serious nature of the accuser's allegations and therefore not a Fourth Amendment due process violation. 422 F.3d 141, 149 (3d Cir. 2005).[10] As this Court previously held with respect to Plaintiff's substantive due process claim, "in light of the government's interest in maintaining order and discipline in the school, together with the compelling need to prevent children from being exposed to unlawful drug use by their parents, and to protect other school children, it is abundantly clear that any claim that Defendants violated J.A.'s right to family integrity and liberty, or that the defendants' failure to obtain parental consent before J.A. was questioned by school officials violated his rights, must be dismissed." (Doc. 43, at 31). This same reasoning applies to Plaintiff's procedural due process liberty claim. The Court will therefore dismiss the Fourteenth Amendment claim with respect to J.A.'s purported liberty interest.

### b. J.A.'s Property Interest

"[T]he State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures

---

[10] To the extent that Plaintiff's allegations are an attempt to re-allege a substantive due process claim, we note that because Fourth Amendment protections cover J.A.'s claim of unlawful detention, a Fourteenth Amendment claim is an improper avenue to pursue her action. *See U.S. v. Lanier*, 520 U.S. 259, 272 n.7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").

required by that Clause." *Goss*, 419 U.S. at 574. As a result, because it is clear that J.A. possessed a property interest in his education, the issue before the Court is whether Defendants violated this right by not providing him with fair notice and opportunity to be heard prior to his expulsion.

Plaintiff admits that an expulsion hearing was held before the Abington Heights Board of Directors, wherein the Board found J.A. guilty of possession of contraband on school property. (Doc. 47, ¶¶ 114-116). It does not appear that J.A.'s procedural due process claim is founded on the principle that J.A. was denied notice and an opportunity to be heard prior to his suspension at this hearing, see *Goss*, 419 U.S. at 579 ("[a]t the very minimum. . . students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing"), or that this particular hearing was unfair, but rather that as a disabled student, J.A. was entitled to another hearing prior to the expulsion hearing that took place. In the present case, Plaintiff contends that this right emanates from several state and federal statutes and regulations, including Section 504 of the Rehabilitation Act, 34 C.F.R. 104.36, and 22 Pa. Code §§ 12, 13, 14, 15. (Doc. 47, ¶¶ 133-147; Doc. 55, at 4-6).

Section 504 provides in relevant part:

No otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . .

14

29 U.S.C. § 794(a).  The regulations regarding the implementation of Section 504 in the

context of educational institutions appear at 34 C.F.R. Part 104.[11]  Pursuant to 34 C.F.R. §

104.36:

> A recipient that operates a public elementary or secondary education program
> or activity shall establish and implement, with respect to actions regarding the
> identification, evaluation, or educational placement of persons who, because
> of handicap, need or are believed to need special instruction or related
> services, a system of procedural safeguards that includes notice, an
> opportunity for the parents or guardian of the person to examine relevant
> records, an impartial hearing with opportunity for participation by the person's
> parents or guardian and representation by counsel, and a review procedure.
> Compliance with the procedural safeguards of section 615 of the Education of
> the Handicapped Act [now "IDEA"] is one means of meeting this requirement.

Defendants' convoluted arguments in support of dismissal of Count I seemingly

revolve around two contentions: (1) J.A.'s right to a hearing pursuant to 34 C.F.R. § 104.36

is a statutory right under Section 504 and not a Constitutional right, and therefore should

have been, and was, addressed during the prior special education due process claim; and

(2) redress was available to the plaintiff and therefore there was no deprivation of due

process.  (Doc. 51, at 7-8).

While Defendants' actions in not following the statutory regulations or School

District's procedures are not to be condoned, they also do not automatically create a

violation of the Fourteenth Amendment.  However, in the instant case, Plaintiff has set forth

sufficient facts to support her claim.  The Court need not, at this stage in the proceedings,

---

[11] See 34 C.F.R. § 104.1 ("The purpose of [34 C.F.R. § 104, et seq.] is to effectuate section 504 of
the Rehabilitation Act of 1973, which is designed to eliminate discrimination on the basis of handicap in any
program or activity receiving Federal financial assistance.").

determine whether or not J.A.'s due process right to an additional hearing or other procedural safeguards is the result of a constitutional right or solely a statutory right, but simply whether Plaintiff has sufficiently alleged facts to support her claim that J.A. was unlawfully deprived of this right.  Defendants' argument ignores the fact that a Constitutional right parallel to that provided by Section 504 may exist which entitles J.A. to further procedural safeguards than he actually received.  *See generally, Goss* (inferring that a flexible standard should be applied in determining a student's procedural due process rights, wherein "the timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved" and therefore "suspensions [longer than 10 days] or expulsions for the remainder of the school term, or permanently, may require more formal procedures [than effective notice and an informal hearing].").  As discussed in detail in Section IV(C), *infra*, Plaintiff has made out a prima facie claim of discrimination under Section 504 of the Rehabilitation Act.  Further, there is no dispute that J.A. did not receive a hearing, or any other additional procedural safeguards legally required to be afforded to disabled students, prior to his expulsion hearing.  At minimum, there is a question as to whether J.A.'s disability should at least have been discussed or considered during his expulsion hearing, raising a question of fact as to the adequacy of the hearing itself.

With respect to the school district's liability, Plaintiff has also adequately pleaded facts that Abington Heights maintained policies, rules, regulations, or customs that deprived

disabled students under Section 504 and other state and federal regulations of their rights, so that liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) would follow.[12]

As to Defendants' contention that due process is not deprived when there is a means to receive redress for the purported deprivation (Doc. 51, at 8-9), the availability of a post-deprivation remedy does not uniformly obviate the necessity of an appropriate pre-deprivation hearing. "[I]f the governmental entity could have, but did not, provide predeprivation procedures, a § 1983 action complaining of the lack of procedural due process may be maintained in federal court, notwithstanding the availability of state judicial routes as well." *Stana v. Sch. Dist. of City of Pittsburgh*, 775 F.2d 122, 130 (3d Cir. 1985). Because J.A. was potentially entitled to pre-expulsion safeguards, including an additional hearing, the post-deprivation remedy does not necessarily cure violations of J.A.'s due process rights. *See, e.g., Borrell v. Bloomsburg Univ.*, ---- F.Supp.3d ---- , (M.D. Pa. 2014) (an expelled student could maintain a due process claim, despite not pursuing available state remedies, because "the availability of post-dismissal procedures is not an adequate substitute for constitutionally-mandated pre-deprivation process."); *Valentine v. Lock Haven Univ.*, 2014 WL 3508257 (M.D. Pa. 2014) (a student's allegations that she had been expelled without a hearing were sufficient to maintain a claim "[s]ince the University's appeals process is no substitute for adequate pre-dismissal procedures.") ; *see also,*

---

[12] Plaintiff alleges that the School District routinely failed to provide any additional safeguards to protect a student with a disability which qualifies him or her for a Section 504 plan prior to expulsion. (*See, e.g.*, Doc. 47, ¶ 38).

*Assenov v. Univ. of Utah,* 553 F.Supp.2d 1319, 1328 (D.Utah 2008) ("Implicit in [the Supreme Court's student dismissal] cases is that post-dismissal procedure alone is not constitutionally sufficient."); *Alvin v. Suzuki,* 227 F.3d 107, 120 (3d Cir.2000) ("[I]f the Constitution requires pre-termination procedures, the most thorough and fair post-termination hearing cannot undo the failure to provide such procedures."). Therefore, at issue is whether J.A. received adequate pre-expulsion due process, not the availability or pursuit of post-expulsion remedies, a question that cannot be resolved at this stage in the proceedings.

Consequently, the Court will deny Defendants' motion to dismiss Plaintiff's constitutional due process claim arising out of J.A.'s property interest in a legitimate entitlement to a public education.

### 2. Individual Defendants Acting in their Official Capacities

Defendants also contend that Count I against the individual defendants in their official capacities must be dismissed because this claim is additionally asserted against the School District. (Doc. 51, at 21-22).

The Supreme Court has emphasized that suits against state actors in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). In other words:

> Suits against state officials in their official capacity therefore should be treated as suits against the State. Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation. . . . Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, on the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.

*Id.* Further, previous decisions

> make[] clear that the distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device. State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals.

*Id.* at 27 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989)) (internal alterations, citations, and quotation marks omitted).

As a result, Count I against the individual defendants in their official capacities will be dismissed.

## C. Count IV – Violation of Section 504 of the Federal Rehabilitation Act

Plaintiff alleges that Abington Heights School District violated Section 504 of the Federal Rehabilitation Act by discriminating against J.A. because of his disability, "in that they failed to provide J.A. and other similarly disabled students their right to an impartial hearing, his right not to be discriminated against due to his disability and his right to equal protection under the law". (Doc. 47, ¶ 185).

To establish a violation of Section 504, a Plaintiff must show that "(1) he is 'disabled' as defined by the Act; (2) he is 'otherwise qualified' to participate in school activities; (3) the

19

school or the board of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school." *Andrew M. v. Delaware Cnty. Office of Mental Health & Mental Retardation,* 490 F.3d 337, 350 (3d Cir.2007) (quoting *Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238, 253 (3d Cir.1999), *superseded by statute on other grounds as recognized by D.F. v. Collingswood Borough Bd. of Educ.,* 694 F.3d 488 (3d Cir. 2012)). In addition, '[t]he state must have failed to provide the service for the sole reason that the child is disabled." *Andrew M.,* 490 F.3d at 350.

Defendants do not appear to dispute that Plaintiff can establish the first three elements to succeed on his § 504 claim, namely, that J.A. was disabled as defined by the Act due to his ADD, that he was qualified to participate in school activities, and that Abington Heights receives federal financial assistance. However, Defendants contend that Plaintiff fails to allege facts to support a finding that J.A. was expelled based on his disability, that he was treated differently in any hearing due to his disability, or that the school officials' decision to expel him was due to his disability. (Doc. 51, at 11-12).

"[A] plaintiff need not establish that there has been an intent to discriminate in order to prevail under § 504." *Nathanson v. Med. Coll. of Pennsylvania,* 926 F.2d 1368, 1384 (3d Cir. 1991). As a result, Plaintiff was not required to allege facts demonstrating an intent on the part of Defendants to discriminate against J.A., but simply that Defendants acts' resulted in the exclusion of J.A. from participation in, the denial of benefits of, or that he was

20

subjected to discrimination at, school, due to his disability. Plaintiff's assertion in her complaint that (1) J.A. was entitled to a pre-expulsion hearing to determine whether his disability was a factor in his actions, (2) that he did not receive this hearing or comparable procedural safeguards, (3) that J.A.'s disability was not taken into account during the expulsion hearing, and (4) that he was expelled, which necessarily deprived him of participation in, and the benefits of, school, are sufficient to meet the fourth element of the Section 504 discrimination analysis. The Court cannot determine at this stage of the proceedings why J.A. was not afforded an additional hearing, or whether he was actually entitled to this hearing. However, Plaintiff's allegations sufficiently "nudge[] [her] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, to warrant a denial of Defendants' motion to dismiss Plaintiff's Section 504 claim on the merits.

### D. Counts I and IV - Effect of the Release and Settlement Agreement

Despite the Court's finding that Plaintiff has asserted facts sufficient to survive dismissal of Count IV on the merits, Plaintiff's claims under Section 504 may later be determined to be barred as a result of her previous settlement with the Abington Heights School District. Likewise, to the extent that Plaintiff fails to establish a basis for her claim of a violation of the Fourteenth Amendment's requirement of procedural due process other than her claims under Section 504, the constitutional claim as well may fall in the face of the settlement in the previous action. This determination cannot be made at this time because the provisions of the Release and Settlement Agreement (Doc. 51, Ex. 1) are reasonably

21

susceptible to divergent interpretations.  Thus, for example, paragraph 17, which contains

the specifics of the scope of the release, indicates that the

> Releasors acknowledge and agree that by accepting the terms of this
> Agreement that they are waiving rights, release, and forever discharge . . .
> from any claim or demand . . . concerning the education of the Student . . .
> including but not limited to claims . . . pursuant to the IDEA and its
> implementing regulation, 34 C.F.R. Part 300 et seq.; Section 504 of the
> Rehabilitation Act of 1973, 29 U.S.C. Section 794, ("Section 504") and its
> implementing regulation, 34 C.F.R. Part 104; the Americans with Disabilities
> Act of 1990, 42 U.S.C. Sections 12101-12213 ("ADA"); The Pennsylvania
> School Code of 1949, 24 P.S. 1-101, et seq.; Chapters 14, 15 and 16 of the
> regulations of the State Board of Education, 22 Pa. Code Chapters. 14, 15,
> and 16; former Chapter 342 of the standards of the Pennsylvania Department
> of Education, former 22 Pa. Code Chapter 342; or any other applicable state
> or federal law for any claim that may arise or has arisen regarding Student's
> educational programming and/or placement . . . .

(Release and Settlement Agreement, ¶ 17).  Whether the terms of this release were

intended to bar a claim of a procedural due process violation under the Fourteenth

Amendment, which has as its source Section 504 of the Rehabilitation Act, cannot be

determined on the face of the Agreement.  Instead, that determination will require testimony

related to the expressed intention of the parties at the time of the formation and execution of

this Agreement as to its scope and preclusive effect on the claims that Plaintiff has asserted

in this action.  Also at issue, given the generality of Plaintiff's allegations in her Second

Amended Complaint, is whether her Fourteenth Amendment claim is founded on some

Constitutional or statutory protection other than that provided by Section 504.

These issues cannot be resolved at the pleading stage and accordingly Defendants'

motion to dismiss as to Counts I and IV must be denied.

## E. Count II – Breach of Fiduciary Duty

In the Court's prior Memorandum Opinion and Order (Docs. 43, 44) granting in part and denying in part Defendants' motion to dismiss Plaintiff's First Amended Complaint, we declined to dismiss Plaintiff's claim for breach of fiduciary duty with respect to Defendants Elia, Antonetti, and Kelly, and dismissed Defendant Mahon without prejudice.

The Court need not analyze whether Plaintiff's complaint alleges sufficient plausible facts to state a claim of breach of fiduciary duty against Mahon. As Defendants properly argue, Mahon is entitled to high public official immunity (*see* Doc. 51, at 17-19).

Pennsylvania common law recognizes the doctrine of absolute immunity for "high public officials", *see Lindner v. Mollan,* 677 A.2d 1194, 1195-96 (Pa. 1996), which include school superintendents such as Mahon, *see, e.g., Petula v. Mellody*, 631 A.2d 762 (Pa. Commw. Ct. 1993); *Smith v. Sch. Dist. of Philadelphia*, 112 F.Supp.2d 417 (E.D. Pa. 2000). An individual will be entitled to high official immunity if he is acting in his official capacity and within the scope of his authority. *See Smith*, 112 F.Supp.2d at 425 (citing generally *Linder*); *Zugarek v. S. Tioga Sch. Dist.,* 214 F.Supp.2d 468, 479 (M.D. Pa. 2002). Consequently, an individual entitled to high official immunity will be absolutely immune from state law civil liability even when willful misconduct is alleged. *Lindner,* 677 A.2d at 1195-96.

Count II of Plaintiff's Second Amended Complaint fails to allege any facts that would indicate that Mahon's actions, or lack thereof, fell outside the scope of his official

duties.[13]  Nor does Plaintiff's brief in opposition to Defendants' motion to dismiss contend

otherwise.  As such, even if the Court were to extend its' prior finding that Plaintiff "put forth

sufficient factual allegations as to the existence of a fiduciary duty between J.A. and [Elia,

Antonetti, and Kelly], a breach of this duty, and the presence of willful misconduct", (Doc.

44, at 37) to Mahon, Plaintiff's claim against Mahon fails as a matter of law.

Defendants also argue that Plaintiff improperly amended the breach of fiduciary duty

claim to add additional allegations of negligence against the individual defendants and that

these new allegations must therefore be stricken from the complaint.  (Doc. 51, at 9-10).  In

as much as the Court has previously found that Plaintiff has stated a claim for a breach of

fiduciary duty against Defendants Elia, Antonetti, and Kelly, the additional allegations,

wholly apart from the fact that they sound in negligence and would therefore be of no

material significance in this claim, do not prejudice the defendants to such a degree that

they will be stricken.

## F. Count III – Punitive Damages

In the Court's prior Memorandum Opinion and Order addressing Defendants' motion

to dismiss Plaintiff's First Amended Complaint, we declined to dismiss the claim for punitive

damages against Defendants Elia, Antonetti, and Kelly in their individual capacities, and

dismissed the claim against Mahon without prejudice.  (Doc. 43, at 38-39, Doc. 44).

Defendants now again seek to dismiss the claim for punitive damages against Mahon.

---

[13] The Second Amended Complaint even specifically admits that "the defendants . . . were minor
plaintiff J.A.'s administrators, teachers and counselors all of whom were acting within the scope and
authority of their employment within Abington Heights." (Doc. 47, ¶ 31).

To recover punitive damages in a §1983 action, Plaintiff must show that the

defendant's conduct was "motivated by evil motive or intent, or . . . involve[d] reckless or

callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30,

56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Pennsylvania law mirrors this standard:

> Punitive damages may be awarded for conduct that is outrageous, because
> of the defendant's evil motive or his reckless indifference to the rights of
> others. Punitive damages must be based on conduct which is 'malicious,'
> 'wanton,' 'reckless,' 'willful,' or 'oppressive'. Further, one must look to the act
> itself together with all the circumstances including the motive of the
> wrongdoers and the relations between the parties. The state of mind of the
> actor is vital. The act, or the failure to act, must be intentional, reckless or
> malicious.

*Feld v. Merriam*, 485 A.2d 742, 747-748 (Pa. 1984) (internal citations and quotation marks

omitted). Furthermore, "a showing of mere negligence, or even gross negligence, will not

suffice to establish that punitive damages should be imposed." *Phillips v. Cricket Lighters*,

883 A.2d 439, 445 (Pa. 2005) (citing *SHV Coal, Inc. v. Continental Grain Co.,* 587 A.2d 702,

705 (Pa. 1991)).

> Plaintiff's claim for punitive damages is based on the following conduct:
>
> (a) depriving Plaintiff of his due process right for over a year, during which
> period he was subject of the most severe of penalties, removal from school;
> (b) restraining the student's liberty for over 7 ½ hours during which period,
> J.A.'s parents were never notified.
> (c) Continuing for over 24 hours a course of conduct that resulted in the
> student being the subject of a public investigation which has irreparably
> harmed his relationship with his family.

(Doc. 47, ¶ 175). While the Court previously found that these allegations "barely 'nudged

[her] claims across the line from conceivable to plausible,' *Twombly*, 550 U.S. at 570,

[Plaintiff] has sufficiently alleged facts to warrant a denial of Defendants' motion to dismiss" with respect to Elia, Antonetti, and Kelly in their individual capacities (Doc. 43, at 39), Plaintiff has still not succeeded in alleging a claim for punitive damages against Mahon.

First, Plaintiff's Second Amended Complaint fails to identify any actions taken by Mahon, or knowledge on his part, with respect to the events of February 24-25, 2011, other than conclusory statements such as alleging that Mahon, along with the other individual defendants "knew or should have known, of the deprivation of the student's liberty during a period in excess of 7 ½ hours, as well as, the fact that the administrators of the AHMS were acting in the capacity of agents of the LCDANU and the local police for a period in excess of 24 hours, yet never advised the student of his Constitutional Rights. . ." (Doc. 47, ¶ 94). There is no allegation that Mahon himself was ever contacted with respect to J.A. on February 24 or 25, that he was aware of the other individual defendants' actions on these days, or that he directed the other defendants' actions, and the Court will not speculate as to the probability that the superintendent for the entire school district would have been contacted or been aware of the events at issue at the middle school on the days in question.

Second, while it is undisputed that Mahon was involved in the expulsion proceedings against J.A., and Plaintiff alleges that Mahon supervises all disciplinary matters within the school district (Doc. 47, ¶ 92), there are no allegations against Mahon to indicate that his actions, or lack thereof, in "depriving Plaintiff of his due process right for over a year", were intentional, reckless, or malicious, or amounted to anything more than negligence or gross

negligence. *See Feld*, 485 A.2d at 748 ("In deciding whether to impose punitive damages a court should not look to the third party's criminal conduct, which in this case was truly outrageous; a court should not look at the end result, which in this case also was outrageous; rather, the court should examine the actor's conduct."). Plaintiff's allegations therefore, that J.A. was ultimately deprived of his due process rights, are not sufficient to support a claim of punitive damages against Mahon. Rather, Plaintiff would have had to plead facts demonstrating that Mahon's actions leading up to J.A.'s expulsion, and any subsequent refusal to take action, were done with a malicious or reckless state of mind. The Second Amended Complaint is devoid of any such specific facts. Simply alleging that J.A. was deprived of certain constitutional or statutory rights is not sufficient.

Therefore, Defendant Mahon will be dismissed with prejudice from Count III of Plaintiff's Second Amended Complaint.

### G. Qualified Immunity

Defendants also argue that Plaintiff's claims against Defendant Mahon should be dismissed because he is entitled to qualified immunity. (Doc. 51, at 19-21).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, -- U.S. --, 131 S.Ct. 2074, 2080, 179 L.Ed. 2d 1149 (2011) (internal citations omitted). "[L]ower courts have discretion to decide which of the two prongs of

27

qualified-immunity analysis to tackle first." *Id.* The doctrine "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, -- U.S. --, 132 S.Ct. 1235, 1244-45, 182 L. Ed. 2d 47 (2012).

The Supreme Court has indicated that, preferably, the issue of qualified immunity "ordinarily should be decided by the court long before trial." *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). However, the Third Circuit has recognized that this preference sometimes must give way to the realities of a case's development. In response to *Hunter*, the Third Circuit said:

> That is well and good when there are no factual issues in a case, but often the facts are intensely disputed, and our precedent makes clear that such disputes must be resolved by a jury after a trial. As a practical matter, then, in such cases the immunity becomes no more than a mere defense, and a sometimes challenging one to establish at that.

*Curley v. Klem*, 499 F.3d 199, 208 (3d Cir. 2007) (internal citations omitted). Thus, though this Court also would prefer to resolve the issue of qualified immunity "long before trial," it cannot do so because of certain factual issues remaining in the case, namely: (1) whether the school district had a rule, policy, or custom of discriminating against Section 504 students; (2) the adequacy of any pre-expulsion procedures that J.A. received; (3) the adequacy of any post-deprivation remedy that J.A. received; and (4) whether J.A. was denied due process because of his disability. These factual questions prevent the Court

28

from determining whether "the official violated a statutory or constitutional right" that was

"clearly established at the time of the challenged conduct." *See al-Kidd*, 131 S.Ct. at 2080.

Therefore, the Court will deny without prejudice Mahon's request for qualified

immunity.

## V. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants'

Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 50).   A separate Order

follows.

Robert D. Mariani
United States District Judge